**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **INTERNATIONAL REFUGEE ASSISTANCE PROJECT** *Plaintiff,* <br><br> **v.** <br><br> **U.S. DEPARTMENT OF STATE;** and <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY** <br><br> *Defendants.* | Case No. 1:26-cv-3095 <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEF** |

**INTRODUCTION**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 *et seq.*, seeking to compel Defendant U.S. Department of State ("DOS") and Defendant U.S. Department of Homeland Security ("DHS") to expeditiously process Plaintiff International Refugee Assistance Project's ("IRAP") FOIA requests ("FOIA Requests"). The information sought is of crucial and immediate importance to the public and will impact the safety and stability of hundreds of thousands of refugees and millions of immigrants and their families in the United States.

2.      The FOIA Requests are for a discrete and tiny universe of documents: (1) the reports submitted to the President by the Secretary of State and the Secretary of Homeland Security pursuant to Section 5 of Presidential Proclamation 10949, Restricting the Entry of

1

Foreign Nationals to Protect the Unted States from Foreign Terrorists and Other National Security and Public Safety Threats (June Travel Ban), (2) the reports relied upon in the issuance of Presidential Proclamation 10998 Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States (December Travel Ban); (3) the reports referenced in Section 4 of Executive Order 14163, Realigning the United States Refugee Admissions Program (Refugee Ban); and (4) the documents and reports disclosed to the *New York Times* and referenced in an article dated October 15, 2025.

3.    Some of the documents sought in the FOIA Requests were released to the *New York Times*, prompting the October 15, 2025 publication of an article reporting on the government's proposed overhaul of the U.S. Refugee Admissions Program ("USRAP").[1] Despite the disclosure of these documents to the press, Defendants failed to release the requested documents in response to the underlying FOIA Requests and have further failed to release the information to the public.

4.    Policies that suspend the processing of applications and bar entry of refugees and nationals of specified countries to the United States have far-reaching implications for immigrants and refugees abroad, as well as their families and communities in the United States. Such policies prevent family reunification, disrupt individuals' ability to seek safety, and have devastating consequences on local communities and the economy. Given that it is critical to understand the basis for these policies, the manner in which they are being implemented, and their effect on millions of individuals worldwide, IRAP seeks an injunction compelling DOS and DHS to expeditiously process its FOIA Requests and promptly produce the requested documents.

---

[1] Zolan Kanno-Youngs and Hamed Aleaziz, *Trump Considers Overhaul of Refugee System that would Favor White People*, The New York Times (Oct. 15, 2025) https://www.nytimes.com/2025/10/15/us/politics/trump-refugee-white-people.html?login=email&auth=login-email.

It remains vitally important that the requested information be disclosed especially in light of Defendants' willingness to share some of the requested information with the media.

5.      In recognizing the Travel and Refugee Ban's far-reaching implications, IRAP submitted the underlying FOIA Requests on December 19, 2025, which sought expedited processing and fee waivers. Ex. 1, DOS FOIA Request; Ex. 2, DHS FOIA Request. IRAP's FOIA Requests demonstrated that IRAP satisfied two independent "compelling need" grounds for expedited processing pursuant to 5 U.S.C. §552(a)(6)(E), 6 C.F.R. §5.5(e), and 22 C.F.R. §171.12(d). *Id.* IRAP's FOIA Requests further demonstrated that IRAP satisfied the "public interest" requirement for a waiver of fees pursuant to 6 C.F.R. §5.11(k) and 22 C.F.R. §171.16(j). *Id.* Despite this showing, DOS denied IRAP's request for expedited processing and a fee waiver on January 2, 2026, without explanation. *See* Ex. 3. DHS denied IRAP's request for expedited processing on January 8, 2026 without explanation, and conditionally granted IRAP' request for a fee waiver. *See* Ex. 4.

6.      There is robust public interest, discussion, and debate about the implementation, scope, and impact of the Travel and Refugee Bans. With every day that passes, millions of directly and indirectly impacted people go without critical information needed to make both time-sensitive and life-altering decisions about their immigration cases. Moreover, immigration attorneys are unable to counsel their impacted clients on any number of nuanced and complex immigration issues.

7.      For these reasons, IRAP files the instant action and respectfully requests the Court to order DOS and DHS to expeditiously process IRAP's FOIA Requests and promptly disclose the requested documents.

**JURISDICTION AND VENUE**

3

7.      This court has subject-matter jurisdiction over IRAP's claims under 5 U.S.C. §552 *et seq.* (FOIA statute) and 28 U.S.C. §1331 (federal question). This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§2201-2202 (Declaratory Judgement Act).

8.      This Court has jurisdiction pursuant to 5 U.S.C. §552(a)(6)(E)(iii) to review an agency's denial of an expedited processing request. *See also* 6 C.F.R. §5.8(e).

9.      Venue is proper in this District under 5. U.S.C. §552(a)(4)(B) and 28 U.S.C. §1391(e) because this is a civil action in which Defendants DOS and DHS are federal agencies, there is no real property involved in this action, and Plaintiff IRAP has its principal place of business in this District.

**PARTIES**

10.      Plaintiff IRAP is a 501(c)(3) non-profit organization incorporated under the laws of New York, and headquartered at One Battery Park Plaza, 33rd Floor in New York, New York. IRAP utilizes media, systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders.

11.      Disseminating information is an integral component of IRAP's mission. IRAP routinely engages in information gathering from its legal and policy work, including through FOIA, analyzing the information, and distributing it. IRAP has published a number of policy reports for the public on refugee resettlement issues and maintains "Know Your Rights" and other educational materials on its website. It routinely releases press releases and publishes a blog on its work and on issues relating to refugee policy. It has a monthly newsletter that reaches over 25,000 individuals. It maintains a Facebook account with over 47,000 followers and a Twitter account with over 18,000 followers. IRAP also routinely collects and distributes

resources and up-to-date information to its network of 30 law school chapters and over 80 law firms with which it works.

12.     Defendant DOS is a cabinet department of the United States federal government with the mission to lead America's foreign policy through diplomacy, advocacy, and assistance. Components of DOS manage the USRAP in conjunction with DHS and the Department of Health and Human Services and contract with organizations that assist in resettling refugees in the United States. DOS is also responsible for the review of visa applications and issuance of visas to foreign nationals located outside the United States. DOS has responsibility over the reports required to be submitted to the President in accordance with Executive Order 11461, Proclamation 10949, and Presidential Proclamation 10988.

13.     Defendant DHS is a cabinet department of the United States federal government. Components of DHS including U.S. Citizenship and Immigration Services ("USCIS") manage core components of the USRAP including conducting quarterly Circuit Rides to interview refugee applicants abroad, evaluating refugee applications and security vetting results, and making recommendations to improve USCIS' administration of immigration benefits. USCIS is also responsible for the review and adjudication of petitions for immigration benefits, including I-130 Petitions for Alien Relative and other applications which form the underlying basis for immigrant and non-immigrant visa applications to the United States. DHS has responsibility for the reports that must be submitted to the President under Executive Order 11451, Proclamation 10949, and Presidential Proclamation 10988.

## FACTUAL ALLEGATIONS

### The Suspension of the U.S. Refugee Admissions Program and its Impacts

14.    On January 20, 2025, the Refugee Ban which suspended the entry of refugees into the United States through the USRAP beginning on January 27, 2025, and the suspension of processing of applications for refugee status. Realigning the United States Refugee Admissions Program, 90 Fed. Reg. 8549 (Jan. 20, 2025) The Executive Order allowed for the Secretaries of DHS and DOS to jointly admit refugees to the United States on "a case-by-case basis…but only so long as they determine that the entry of such aliens as refugees is in the national interest and does not pose a threat to the security or welfare of the United States." *Id.*

15.    Section 4 of the Refugee Ban requires the Secretary of Homeland Security in consultation with the Secretary of State to submit a report to the President within 90 days of the order advising whether the resumption of USRAP is in the national interest of the United States. The Executive Order further requires the Secretary of Homeland Security and the Secretary of State to submit a report "every 90 days thereafter" assessing the same. *Id.* at 8460.

16.    Rather than waiting for the effective date of the Refugee Ban (January 27, 2025), federal government agencies immediately canceled scheduled travel for refugees and suspended the processing of all refugee applications.[2] The administration's immediate suspension of the USRAP predictably resulted in chaos, with hundreds of thousands of refugees suddenly unable to proceed with their applications. Currently, 581,482 applicants for refugee status have had their USRAP processes suspended, 132,032 of whom were already conditionally approved for refugee resettlement.[3]  The affected refugees include individuals with pending or approved follow-to-join

---

[2] Priscilla Alvarez and Hely Britzky, *Flights Canceled for Refugees Who Were Slated to Travel To US,* CNN (Jan. 22, 2025) https://www.cnn.com/2025/01/22/politics/refugee-flights-canceled/index.html?cid=ios_app.
[3] U.S. Dep't of State, *Report to Congress on the United States Refugee Admissions Program, Screening, Processing, and Referral Statistics* (June 2025) https://www.state.gov/wp-content/uploads/2025/09/2025-06-23-P-CRM-006768-USRAP-Screening-Processing-and-Referral-Statistics-Tab-1-Report-HRC120.pdf.

applications (Form I-730), which allows for the spouse and minor children of already resettled refugees to join them in the United States.

17.    The suspension of the USRAP became an issue of widespread public concern within the United States. Media outlets reported widely on the chaos and confusion caused by the Refugee Ban, the resulting continued family separation, and disruption to the operations of refugee resettlement organizations.[4]

18.    While the broader Refugee Ban has been in place, the government established a priority refugee admissions process exclusively for Afrikaners from South Africa. Several groups of Afrikaners have been resettled through this program while processing of refugees from other countries remains suspended.[5]

19.    On October 15, 2025, The *New York Times* published an article based on documents received from federal government officials describing a proposed overhaul of the USRAP preferencing English speakers, Afrikaners, and Europeans who hold political beliefs opposing migration.[6] As The *New York Times* article reported, these proposals would radically change the purpose and scope of the USRAP from providing protection to the world's most vulnerable individuals to prioritizing the immigration of individuals who conform to the administration's view of who deserves to be an American.[7]

---

[4] Alvarez and Britzky, *supra* note 2; Hamed Aleaziz, *Groups Sue Over Trump's Pause on Refugee Admission*, The New York Times (Feb. 10, 2025) https://www.nytimes.com/2025/02/10/us/politics/refugee-lawsuit-trump.html; Jennifer Ludden, *Trump Freeze on Resettlement Funding Leaves New Refugees Scrambling to Adjust in the U.S.*, NPR (March 8, 2025) https://www.npr.org/2025/03/06/nx-s1-5309763/refugees-limbo-trump-freeze-resettlement-programs; Emmanuel Igunza, *A Life in Limbo for Somali Refugees Still Hoping to Make it to America*, NPR (April 18, 2025) https://www.npr.org/2025/04/18/nx-s1-5273584/a-life-in-limbo-for-somali-refugees-still-hoping-to-make-it-to-america; Hanna Beech, *'Broken My Hope': Trump's Move to Slash Refugee Arrivals Ricochet's Widely*, The New York Times (Nov. 6, 2025) https://www.nytimes.com/2025/11/06/world/asia/trump-refugee-cap-despair.html.
[5] Ximena Bustillo, *First Afrikaners Arrive in the U.S. Under Radically Redrawn Refugee Program*, NPR (May 12, 2025) https://www.npr.org/2025/05/12/g-s1-65984/south-african-afrikaner-refugee-us.
[6] Kanno-Youngs and Aleaziz, *supra* note 1.
[7] *Id.*

20.    On information and belief, Defendants or other government officials released the reports referenced in Section 4 of the Refugee Ban and possibly other relevant documents to the *New York Times* ahead of the publication of the October 15, 2025 article. To date, the information and documents shared by with the *New York Times* have not been disclosed in response to the underlying FOIA Requests nor shared with the public.

21.    Shortly after the publication of the *New York Times* article, the Presidential Determination on Refugee Admissions for Fiscal Year 2026 was announced, setting a cap on refugee admissions at 7,500—the lowest determination ever set in the history of the refugee program. Presidential Determination on Refugee Admissions for Fiscal Year 2026, 90 Fed. Reg. 49005 (Oct 31, 2025). These 7,500 slots have been reserved primarily for Afrikaners from South Africa. *Id.*

22.    Hundreds of thousands of directly impacted individuals, along with their families, employers, attorneys, and communities now exist in a state of limbo, unsure of their ability to travel to the U.S. as refugees or reunite with family members. Without access to the information released by the government to the New York Times, and the reports submitted to the President as required under section 4 of the Refugee Ban, IRAP is unable to provide complete information about the current status of the Refugee Ban or give informed guidance about the Ban's impact on the public or future changes to the USRAP.

**The Travel Bans and their Impacts**

23.    On June 4, 2026, President Trump issued the June Travel Ban through an Executive Order titled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats," 90 Fed. Reg. 24497 (June 4, 2026). The June Travel Ban fully restricted travel to the United States by

8

nationals of Afghanistan, Burma, Chad, Republic of Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen, and partially restricted travel to the United States by nationals of Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan, and Venezuela. *Id.* Shortly after the June Travel Ban was announced, Reuters reported that the administration was considering adding an additional 36 countries to the Travel Ban.[8]

24.     On December 16, 2025, President Trump issued the December Travel Ban through an Executive Order titled, "Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States," 90 Fed. Reg. 59717 (Dec. 16, 2025). The December Travel Ban added Burkina Faso, Laos, Mali, Niger, Sierra Leone, South Sudan, Syria, and individuals with documents issued by the Palestinian Authority to the list of countries from which travel to the United States is fully restricted. *Id.* The December Travel Ban further partially suspended entry of nationals from Angola, Antigua and Barbuda, Benin, Cote d'Ivoire, Dominica, Gabon, Gambia, Malawi, Mauritania, Nigeria, Senegal, Tanzania, Tonga, Turkmenistan, Zambia, and Zimbabwe. *Id.*

25.     Section 5 of the June Travel Ban requires Secretary of State submit a report to the President 90 days after the issuance of the Travel Bans and every 180 days thereafter assessing the need for continued restrictions and making recommendations as to whether countries should be removed or added to the list of restricted countries. *See* 90 Fed. Reg. at 25403. President Trump purportedly relied on the report referenced in Section 5 of the June Travel Ban to justify issuance of the December Travel Ban. *See* 90 Fed. Reg. at 59717-19.

---

[8] Humeyra Pamuk, *Trump Administration Weights Adding 36 Countries to Travel Ban, Memo Says*, Reuters (June 16, 2025) https://www.reuters.com/world/us/trump-administration-weighs-adding-36-countries-travel-ban-memo-says-2025-06-15/.

26.     Together the Travel Bans fully or partially restrict the nationals of 39 countries from entering the United States with two enumerated case-by-case exceptions. *See id.* at 59727; Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats, 90 Fed. Reg. at 24503. Consequently, millions of people face ongoing uncertainty and fear about how the Travel Ban affects their immigration cases and those of their family members.[9] Since the Travel Bans were issued, significant questions about their implementation and scope remain, including whether the Travel Bans apply to those entering with refugee status or humanitarian parole, how the case-by-case exceptions are applied, and whether the more countries will be added to the list of restricted countries.

27.     The lack of publicly available information about the Travel Bans is a matter of grave public concern to those impacted both within the United States and abroad. Media reporting has repeatedly emphasized that impacted communities lack the information they need to understand their options and plan their lives; this lack of information stokes uncertainty and fear month those seeking visas and those already with legal status, who seek to reunite with family or dread the non-renewal of their visas.[10]

28.     Indeed, the Travel Bans have already had collateral effects on nationals of restricted countries within the United States, as U.S. Citizenship and Immigration Services has

---

[9] American Immigration Council, *Analysis of Trump's New Travel Ban* (June, 6 2025) https://www.americanimmigrationcouncil.org/fact-sheet/analysis-trump-travel-ban/.

[10] Niha Masih, et. al, *Trump's travel ban triggers fear and uncertainty in affected countries,* The Washington Post (June 7, 2025) https://www.washingtonpost.com/world/2025/06/05/trump-travel-ban-afghanistan-venezuela-reaction/; Suzanne Gamboa, et. al, *Those from the countries in Trump's travel ban say they're confused and angry about what comes next*, NBC (June 5, 2025) https://www.nbcnews.com/news/us-news/trump-travel-ban-sparks-confusion-affected-families-rcna211169; Ivan Taylor, *Trump's new travel ban shakes South Florida families with ties to Cuba, Haiti, and Venezuela*, CBS (June 10, 2025) https://www.cbsnews.com/miami/news/trumps-new-travel-ban-shakes-south-florida-families-with-ties-to-cuba-haiti-and-venezuela/; *How have the Trump Administration's Policies Impacted Refugees*, IRC (Sept. 18, 2025) https://www.rescue.org/article/how-have-trump-policies-impacted-refugees.

(USCIS) announced an indefinite pause on the adjudication of applications from nationals of restricted countries—including asylum and lawful permanent residence applications.[11] USCIS further announced that it will review immigration applications that have already been approved for individuals from countries included in the Travel Bans.[12]

29.    Without access to the requested information IRAP along with impacted individuals, their lawyers, families, and communities, are unable to properly assess the risks and benefits faced by impacted individuals or properly advise clients about the effects of the Travel Bans on their immigration cases.

**Plaintiff's FOIA Requests**

30.    IRAP filed FOIA Requests with DOS and DHS on December 19, 2025 requesting the reports referenced in the Travel and Refugee Bans as well as the documents disclosed to the *New York Time*s that were discussed in the October 15, 2025 article.

31.    IRAP requested expedited processing pursuant to 5 U.S.C. §552(a)(6)(E), 6 C.F.R. §5.5(e), and 22 C.F.R. §171.12(d), based on two reasons. First, The FOIA Request involves "an urgency to inform the public about an actual or alleged federal government activity" by IRAP, an organization "primarily engaged in disseminating information." *See* 5 U.S.C. §552(a)(6)(E)(v)(II); 22 C.F.R. §171.12(d)(1)(ii); 6 C.F.R. §5.5(e)(1)(ii); Ex. 1; Ex. 2. Second, the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual. *See* 5 U.S.C. §552(a)(6)(E)(v)(I); 22 C.F.R. §171.12(d)(1)(i); 6 C.F.R. §5.5(e)(1)(i). The FOIA Requests included "a statement certified to be

---

[11] USCIS, *Policy Memorandum: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries*, (Jan. 1, 2026) https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf.
[12] *Id.*

11

true and correct, explaining in detail the basis for making the request for expedited processing as required by 22 C.F.R §171.12(d)(3) and 6 C.F.R. §5.5(e)(3).

32.    As stated in the FOIA Requests, IRAP is a 501(c)(3) non-profit organization that utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve refugees, asylum seekers, and other people seeking safety.[13] IRAP works with a global network of student advocates, pro bono partners, and volunteers to deliver legal solutions for displaced people. Disseminating information is an integral component of IRAP's mission to create a world where people seeking safety are empowered.[14] To engage in its mission-driven work, IRAP relies on FOIA requests, such as the requests underlying this lawsuit, to understand governmental policies affecting refugees, asylum seekers and other displaced people on the move. IRAP intends to use the data sought in the instant requests to educate the public about the Travel and Refugee Bans, and to inform its advocacy and legal services.

33.    For instance, since 2009, IRAP has filed over a hundred FOIA requests and published thousands of pages of government documents obtained as a result of those requests on its website and a global document sharing platform[15] to provide the public with a clearer understanding of how various immigration processes work and are affected by government policies, including those impacting refugees and asylees.[16]

34.    IRAP routinely analyzes and uses materials obtained through FOIA and other methods to create and publish informational and educational materials about safe pathways for

---

[13] *See Mission & Vision,* IRAP (last accessed April 2, 2026) https://refugeerights.org/who-we-are/mission-vision.
[14] *See Id.*
[15] *See IRAP's U.S. Government Document Collections*, IRAP (last accessed April 2, 2026) https://refugeerights.org/freedom-of-information-act-foia-work-document-collections-lkt.
[16] *See IRAP Shares Its Archive of Thousands of U.S. Government Policy and Training Documents Obtained Through the Freedom of Information Act,* IRAP (last accessed April 2, 2026) https://refugeerights.org/news-resources/irap-shares-its-archive-of-thousands-of-u-s-government-policy-and-training-documents-obtained-through-the-freedom-of-information-act-lkt-foia.

displaced people.[17] These materials are widely disseminated to the public free-of-charge through IRAP's legal information website, blogs, and publications posted on its website, and social media platforms.[18]

35.    Additionally, expedited processing is warranted because the Refugee Ban leaves over 500,000 individuals—many of whom live in dangerous circumstances—in limbo without information about the prospects and futures of their refugee resettlement applications.[19] Furthermore, the Travel Bans leaves millions of people both within the United States and abroad uncertain as to their ability to travel to the United States, reunify with family members, or the status of currently pending applications with USCIS.[20]

36.    The FOIA Requests also sought a fee waiver pursuant to 6 C.F.R. §5.11(k) and 22 C.F.R. §171.16(j), explaining that disclosure of the information is in the public interest and that disclosure of the information is not in IRAP's commercial interest. Ex. 1; Ex. 2.

37.    As stated in the FOIA Requests, disclosure of the requested information is in the public interest because the lack of publicly available information is causing confusion over the extent, implementation, and futures of the Travel and Refugee Bans. The Travel and Refugee Bans affect millions of individuals in the United States and abroad, and have the potential indirectly impact broader communities within the United States.[21] Media reporting on both the

---

[17] *See, e.g., IRAP Shares U.S. Government Training and Guidance Documents Related to Afghan Refugee, Asylum, SIV, and Parole Processing*, IRAP (last accessed April 2, 2026) https://refugeerights.org/news-resources/irap-shares-u-s-government-policy-training-and-other-documents-related-to-afghan-refugee-asylum-siv-and-parole-processing-lkt-foia; *Practice Advisory: New Central American Minors (CAM) Program Documents Answer Questions About Processing*, IRAP (last accessed April 2, 2026) https://refugeerights.org/news-resources/practice-advisory-new-central-american-minors-cam-documents-answer-questions-about-processing-lkt-foia.

[18] *See e.g.*, International Refugee Assistance Project (@IRAP), X, https://twitter.com/IRAP; International Refugee Assistance Project, Facebook, https://www.facebook.com/RefugeeAssist/.

[19] U.S. Dep't of State, *supra* note 3.

[20] American Immigration Council, *supra* note 9.

[21] U.S. Dep't of State, *supra* note 3; American Immigration Council, *supra* note 9.

Travel and Refugee Bans demonstrate that the Bans are an ongoing matter of grave concern to the public.[22]

38.    Furthermore, a fee waiver is warranted because disclosure is not primarily in IRAP's commercial interest. IRAP is a 501(c)(3) non-profit organization seeking the requested information to serve and educate its clients, members, partners, and the public. IRAP intends to use the information sought to inform its organizational materials and guidance, as IRAP provides free resources to refugees and asylees in the United States and to displaced people across the world.

**Defendants' Responses to Plaintiff's FOIA Requests**

39.    By letter dated January 2, 2026, DOS acknowledged receipt of the FOIA Request. *See* Ex. 3.

40.    DOS's letter assigned case number F-2026-06988 and placed the case on DOS's "complex" track and invoked the "unusual circumstances" exception to responding within 20 days of filing.

41.    DOS's January 2, 2026, letter denied IRAP's request for expedited processing, stating, "Your request does not demonstrate a 'compelling need' for the requested information. Therefore, this Office denies your request for expedited processing." Ex. 3 at 1. The letter did not acknowledge or respond to IRAP's reasons for requesting expedited processing based on 22 C.F.R. §171.12(d)(1)(i), which provides for expedition where failure to release records may pose an imminent threat to life or safety, or  22 C.F.R. §171.12(d)(1)(ii), which provides for expedition when requester is primarily engaged in disseminating information and there is an

---

[22] Alvarez and Britzky, *supra* note 3; Aleaziz, *supra* note 4; Ludden, *supra* note 4; Igunza, *supra* note 4; Beech, *supra* note 4; Masih, *supra* note 10; Gamboa, *supra* note 10; Taylor, *supra* note 10.

"urgency to inform the public."  The letter did not deny IRAP's role in disseminating information and in fact stated in the fee waiver section that IRAP's request fell into the category of "'news media' requester." Ex. 3 at 2.  But it provided no explanation for why IRAP did not demonstrate a "compelling need" for the information. Instead, it merely set forth the DOS regulations providing grounds for expedited processing. *See id.* At 1 (reciting 22 C.F.R. §171.12(d)(1)).

42.    DOS also denied IRAP's request for a fee waiver, stating "[y]our request does not meet the public interest standard set forth in §22 CFR 171.16(j)(2)(ii). Therefore, this Office denies your request for a fee waiver." Ex. 3 at 2. The letter did not acknowledge or respond to IRAP's reasons for requesting a fee waiver, nor provide any explanation for why IRAP did not meet the "public interest" standard. Instead, it merely set forth the DOS regulations providing the requirements for a fee waiver. *See id. a*t 2 (reciting 22 C.F.R. §171.16(j)).

43.    Defendant DHS acknowledged receipt of IRAP's FOIA Request via the SecureRelease Portal on January 8, 2026. Ex. 4.

44.    DHS's notification assigned case number 2026-HQFO-01320 and invoked the ten-day extension for a response pursuant to 6 C.F.R. §5.5(c). Ex. 4.

45.    DHS's January 8, 2026 notification made no mention of IRAP's request for expedited processing, but the SecureRelease portal case page notes that expedited processing was denied.

46.    DHS conditionally granted IRAP's request for a fee waiver. *See* Ex. 4.

47.    Neither DOS nor DHS has produced any documents in response to the FOIA Requests.

**Plaintiff's Appeal of Defendant DOS's Response**

15

48.     On March 27, 2026, IRAP, by electronic mail, timely filed an administrative appeal to DOS's determination denying IRAP expedited processing of the FOIA Request and denying IRAP a fee waiver. *See* Ex. 5.

49.     DOS acknowledged receipt of IRAP's administrative appeal by email on March 30, 2026, and assigned the appeal case number A-2026-00278. *See* Ex. 6.

50.     DOS has not produced any records or made any substantive response to the FOIA Request.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of FOIA, 5 U.S.C. §552
### Failure to Grant Request for Expedited Processing

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

52.     Under FOIA, agencies must promulgate regulations providing for expedited processing of requests for records when the requestor "demonstrates a compelling need." 5 U.S.C. §552(a)(6)(E)(i)(I). Compelling need requires that the request is made by a person or organization "primarily engaged in disseminating information," when either (1) there is an "urgency to inform the public concerning actual or alleged Federal Government activity," (2) "failure to obtain requested records on an expedited basis…could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (3) "in other cases determined by the agency." *Id*. §§ 552(a)(6)(E)(i)(II), (v)(I)-(II).

53.     Plaintiff requested expedited processing pursuant to 5 U.S.C. §552(a)(6)(E), and DHS's implementing regulations 6 C.F.R. §§5.5(e)(1)(i)-(ii) and demonstrated why each of these grounds for expedited processing is independently warranted. *See* Ex. 2.

16

54.     Defendant DHS acknowledged receipt of Plaintiff's FOIA Request, but failed to acknowledge Plaintiff's request for expedited processing in violation of 6 C.F.R. §5.5(e)(4) requiring DHS to notify the requester within ten calendar days of its decision on a request for expedited processing.

55.     Defendant DHS's failure to respond to IRAP's expedited processing violates 5. U.S.C. §552(a)(6)(E) and DHS's own regulations.

56.     Plaintiff requested expedited processing pursuant to 5 U.S.C. §552(a)(6)(E) and DOS's implementing regulations 22 C.F.R. §171.12(d) subparts (i) and (ii), and demonstrated why each of these grounds for expedited processing is independently warranted. *See* Ex. 1.

57.     Defendant DOS summarily denied expedited processing in its letter dated January 2, 2026, although it acknowledged IRAP's role as "news media," that is, as an entity primarily engaged in disseminating information. *See* Ex. 3.

58.     Defendant DOS's failure to grant Plaintiff's request for expedited processing violates 5 U.S.C. §552(a)(6)(E) and DOS's own regulations.

**COUNT II**
**Violation of FOIA, 5 U.S.C. §552**
**Failure to Grant Request for Fee Waiver**

59.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

60.     Plaintiff requested a fee waiver pursuant to 5 U.S.C. §552(a)(4), and DOS's implementing regulations, 22 C.F.R. §171.16(j), and demonstrated why disclosure of the information sought was in the public interest and was not in Plaintiff's commercial interest. *See* Ex. 1.

17

61.    Defendant DOS summarily denied Plaintiff's request for a fee waiver stating that Plaintiff did not "meet the public interest standard set forth in 22 C.F.R. §171.16(j(2)(ii)." Ex. 3.

62.    Defendant DOS's denial of Plaintiff's request for a fee waiver violates 5 U.S.C. §552(a)(4), and DOS's own regulations.

## COUNT III
## Violation of FOIA, 5 U.S.C. §552
## Failure to Respond within the Time Required by Statute

63.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

64.    Defendants are obligated under 5 U.S.C. §552(a)(6)(A)(i) to respond to Plaintiff's FOIA Request within 20 days of receipt.

65.    5 U.S.C. §552(a)(3)(A) requires Defendant to make the requested records "promptly available," to Plaintiff.

66.    On information and belief, Defendants currently have possession, custody, or control of the requested records.

67.    Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

68.    Defendants' failure to make a determination with regard to each FOIA Request within 20 days after receipt violates 5 U.S.C. §552(a)(6)(A)(i) and applicable regulations promulgated thereunder, 6 C.F.R. §5.6(c); 22 C.F.R. §171.11(e).

## COUNT IV
## Violation of FOIA, 5, U.S.C. §552
## Failure to Conduct an Adequate Search for Responsive Records

69.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

70.     Defendants are obligated under 5 U.S.C. §552(a)(3)(C) to conduct a reasonable search for the records responsive to Plaintiff's FOIA Requests.

71.     Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendants' failure to search for them.

72.     Defendants' failure to conduct a reasonable search for records responsive to Plaintiff's Requests violates 5 U.S.C. §552(a)(3)(C) and the regulations promulgated thereunder, 22 C.F.R. §171.11.

### COUNT V
### Violation of FOIA, 5 U.S.C. §552
### Failure to Disclose Responsive Records

73.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

74.     Defendant is obligated under 5 U.S.C. §552(a)(3) to promptly produce records responsive to Plaintiff's FOIA Requests.

75.     On information and belief, Defendants currently have possession, custody, or control of the requested records.

76.     Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

77.     Defendants' failure to disclose records responsive to Plaintiff's FOIA Requests violates 5 U.S.C. §552(a)(3).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff IRAP respectfully requests that this Court:

19

1. Assume jurisdiction over this action and maintain jurisdiction until Defendants produce the requested records and comply with every Order of this Court;

2. Declare that Defendants are in violation of FOIA by failing to respond to Plaintiff's FOIA requests, unlawfully withholding the requested records, and failing to grant expedited processing and fee waivers.

3. Order Defendants to complete expedited processing and respond to the FOIA Requests including by conducting a reasonable search for the requested records and promptly disclosing them at no cost;

4. Award Plaintiff reasonable attorney fees and costs pursuant to 5 U.S.C. §552(a)(4)(E), the Equal Access to Justice Act, and any other applicable provisions of law; and

5. Grant such other and further relief as the Court may deem just and appropriate.

Dated: April 15, 2026

Respectfully submitted,

/s/ Ghita R. Schwarz
Ghita Schwarz
International Refugee Assistance Project
One Battery Park Plaza, 33rd Floor
New York, NY 10004
646-939-9169
gschwarz@refugeerights.org

Dalia Fuleihan*
International Refugee Assistance Project
P.O. Box 47611
Chicago, IL 60647
64-740-6271
dfuleihan@refugeerights.org

*Motion for admission pro hac vice forthcoming

20